UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LEMONT LOVE, | Civil Action No. 15-3681 (SDW) |
| Plaintiff, | |
| v. | OPINION |
| NEW JERSEY DEPARTMENT OF CORRECTIONS, et al., | |
| Defendants. | |

**WIGENTON**, District Judge:

Plaintiff, Lemont Love, filed a complaint against Defendants on or about June 2, 2015. (ECF No. 1). On June 22, 2015, this Court granted Petitioner's application to proceed *in forma pauperis*. (ECF No. 3). At this time, this Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim for which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set out below, this Court will dismiss with prejudice Plaintiff's claims against the New Jersey Department of Corrections and Northern State Prison; dismiss with prejudice Plaintiff's claims against Defendants Lanigan, Johnson, St. Paul, Washington, and John Doe Corrections Officers in their official capacities only to the extent Plaintiff seeks money damages; permit Plaintiff's individual capacity and injunctive relief claims against Defendants Lanigan, Johnson, St. Paul, Washington, and John Doe Corrections Officers to proceed at this time; and dismiss without prejudice Plaintiff's claims against all remaining Defendants.

**I. BACKGROUND**

Plaintiff, Lemont Love, is a convicted state prisoner currently incarcerated at Northern State Prison. Plaintiff makes the following allegations in his complaint. In October of 2007, the Middlesex County Prosecutor's Office seized a bank account in plaintiff's name, presumably in connection with his criminal prosecution. (ECF No. 1 at 9). Plaintiff brought suit to recover the money from the account, which ultimately settled by way of consent order on August 26, 2013. (*Id.*). Pursuant to that order, the prosecutor was to return $6,691.49 to Plaintiff by way of a check which was to be sent within 60-90 days to Plaintiff's brother as Plaintiff didn't trust prison staff. (*Id.*). The assistant prosecutor handling the case, Defendant Zanetakos, had a check for that amount issued, but instead of mailing it to Plaintiff's brother, the check was sent to Plaintiff at the prison. (*Id.*).

On April 6, 2015, Plaintiff received a mail receipt from the prison informing him that a check in the amount set forth in the consent agreement had been received and credited to his prison account. (*Id.*). While Plaintiff alleges that the check was clearly legal mail and should not have been opened, he also states that the envelope in which the check arrived was marked with the return address of the Middlesex County Board of Chosen Freeholders. (*Id.* at 10). While the money remained in Plaintiff's account, approximately sixteen hundred dollars was deducted from the money deposited in his account to pay various fees owed by Plaintiff.[1] (*Id.* at 11).

---

[1] Plaintiff attempts to characterize these deductions as the prison "spending" his money at its discretion. (*Id* at 11). The certified account statement he attaches to his complaint, however, makes it clear that these deductions covered the costs of loans, fines, and fees Plaintiff owed to, among others, this Court and the State of New Jersey arising out of his criminal convictions and filing of civil suits. (Document 3 attached to ECF No. 1 at 11).

2

Upon receiving the check receipt, Plaintiff submitted a remedy request form "refusing to accept those funds and inquir[ing] about why his legal mail was opened." (*Id.* at 9). Plaintiff was ultimately informed that it was the prison's policy to endorse and deposit into a prisoner's account any check sent to him while in prison. (*Id.* at 10). Plaintiff thereafter contacted Defendant Zanetakos on April 7, 2015, inquiring into why the check was sent to the prison. (*Id.*). In response, he was informed that the sending of the check was "an oversight." (*Id.* at 10).

Plaintiff also alleges that, in addition to the check discussed above, several corrections officers including Defendants St. Paul and Washington, opened other pieces of Plaintiff's legal mail without his presence or authorization. (*Id.* at 10-11). Plaintiff further alleges that, on several occasions, Defendant St. Paul, along with a group of other John Doe corrections officers, entered the law library of the prison and read the legal mail and legal documents of several prisoners "for no reason." (*Id.* at 10).

## II. DISCUSSION

### A. Legal Standard

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. §§

1915(e)(2)(B) and 1915A because Plaintiff is a prisoner bringing claims against governmental employees who is proceeding *in forma pauperis*.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim[2], the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

**B. Analysis**

Plaintiff seeks to sue Defendants for violations of his federal constitutional rights pursuant to the federal civil rights statute, 42 U.S.C. § 1983. Section 1983 provides "private citizens with a means to redress violations of federal law committed by state individuals."

---

[2]  "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

*Woodyard v. Cnty. Of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013).  To assert a claim under the statute, a plaintiff must allege that he was deprived of a federal constitutional or statutory right by a person who was acting under the color of state law at the time that the alleged deprivation occurred.  *Id.*  When called upon to evaluate a claim under § 1983, a court must first "identify the exact contours of the underlying right said to have been violated" and determine "whether the plaintiff has alleged a deprivation of a constitutional right at all."  *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998)).  Here, Plaintiff asserts claims that Defendants violated his Fourteenth Amendment Due Process and First Amendment rights in so much as the prison cashed a check without his authorization and opened and read his legal mail outside of his presence.

**1.  Bank of America and its employees were not acting under color of state law and therefore are not liable for suit pursuant to § 1983.**

Plaintiff names as defendants numerous John Does, including several employees of Bank of America allegedly involved in the cashing of his settlement check.  Section 1983 only gives rise to a cognizable claim where a plaintiff's constitutional rights are impugned by a state actor.  *See Kach v. Hose*, 589 F.3d 626, 645-46 (3 Cir. 2009).  A § 1983 Plaintiff therefore only states a claim for which relief can be granted where he can "demonstrate a violation of a [constitutional right] . . . by a person acting under color of state law."  *Cahill v. Live Nation*, 512 F. App'x 227, 230 (3d Cir. 2013).  A private entity, such as Bank of America, and its employees can only be held liable under § 1983 where the entity "may fairly be said to be a state actor."  *Id.* (quoting *Lugar v. Endmondson Oil Co.*, 457 U.S. 922, 937 (1982)).  A private entity may only be fairly said to be a state actor where there exists a "close nexus between the State and the challenged

5

action." *Kach*, 589 F.3d at 646.  A private entity must therefore satisfy one of three tests in order to be treated as a state actor:  "(1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Id.* (internal quotations omitted).  Here, Plaintiff pleads only that the Bank employees cashed and deposited the check brought to them by prison officials, which cannot be said to be a traditional state activity.  Plaintiff has likewise pled no facts which would support the contention that the state and bank were interdependent, nor that the bank was acting in concert with state officials to deprive Plaintiff of his rights, rather than simply cashing the check as part of an arms-length transaction.  Plaintiff has therefore failed to plead any action by the bank employees which would establish a "close nexus" between the bank employees and the state sufficient to qualify them as state actors under any of the three tests.  *Id.*  As such, the § 1983 claims against the John Doe bank employees must be dismissed.

**2. Neither Northern State Prison nor the Department of Corrections are persons subject to suit under the statute.**

Plaintiff also names as Defendants Northern State Prison and the New Jersey Department of Corrections.  "Neither states, nor their departments and agencies . . . are 'persons' within the meaning of Section 1983." *Goode v. N.J. Dep't of Corr.*, No. 11-6960, 2015 WL 1924409, at *10 (D.N.J. April 28, 2015).  A state department of corrections and the prisons it operates are therefore not "persons" under the statute and "cannot be sued under 42 U.S.C. § 1983." *Pettaway v. SCI Albion*, 487 F. App'x 766, 768 (3d Cir. 2012).  Plaintiff's § 1983 claims against

Northern State Prison and the New Jersey Department of Corrections must therefore be dismissed with prejudice.

Plaintiff's official capacity claims seeking money damages against the employees of the Prison and Department are likewise therefore not cognizable under the statute.  A suit against a state employee in his official capacity represents only an alternative means by which to bring suit against the entity by which he is employed.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978); *see also Grohs v. Yatauro*, 984 F. Supp. 2d 273, 280 (D.N.J. 2013); *see also Will v. Michigan Dep't of State Pol.*, 491 U.S. 58, 71 (1989).  A suit against an employee of a state or one of its departments is therefore "no different from a suit against the state itself." *Grohs*, 984 F. Supp. 2d at 280.  As the Eleventh Amendment bars suits for money damages against the State, its agencies, and its departments, and because the NJ Department of Corrections and the prisons it operates are not "persons" amenable to suit under the statute, an officer or employee of the Department or the prison may not be sued for money damages in his official capacity under § 1983.  *Id.; see also Ewing v. Cumberland Cnty.*, No. 09-5432, 2015 WL 1384374, at *25 (D.N.J. Mar. 25, 2015); *Brown v. New Jersey Dep't of Corr.*, No. 12-5069, 2014 WL 4978579, at *2 (D.N.J. Oct. 3, 2014); *Grabow v. S. State Corr. Facility*, 726 F. Supp. 537, 538-39 (D.N.J. 1989).  Thus, to the extent that Plaintiff seeks money damages, the claims against Defendants Johnson, Lanigan, St. Paul, Washington, and the John Doe prison officials must be dismissed with prejudice.  Those claims will not be dismissed to the extent they seek injunctive relief only, however.

**3. Plaintiff has failed to plead a cognizable claim against the County Board and Prosecutor Defendants**

As to Middlesex County Prosecutor's Office and related defendants, including Defendants Zanetakos, Carey, and the John Doe prosecutors and County Board employees, Plaintiff pleads that they are liable under § 1983 solely because Zanetakos "caused all of the violations of Plaintiff's rights by breaching the terms of the consent order signed by [Zanetakos] and [Plaintiff]." (ECF No. 1 at 6). Plaintiff's claim against these Defendants therefore amounts to a claim that his rights were violated only in so much as the consent order was violated by mailing Plaintiff's settlement check to Plaintiff rather than his brother.

Plaintiff's complaint suggests, however, that Defendant Zanetakos's mailing of the check to the prison was the result of an inadvertent "oversight." (ECF No. 1 at 10). As to Zanetakos, then, Plaintiff has pled no more than negligence. Even if the breach of a state court consent order could be said to be a violation of Plaintiff's due process rights, negligence is insufficient as a matter of law to support a Fourteenth Amendment claim brought pursuant to § 1983. *See Wright v. Warden, Forest SCI*, 582 F. App'x 136, 138 (3d Cir. 2014); *see also Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986) ("the Due Process Clause of the Fourteenth Amendment is not implicated by the lack of due care of an official causing unintended injury to life, liberty, or property"). Likewise, to the extent that Plaintiff is attempting to plead that Zanetakos and the other county Defendants deprived him of his property interest in the returned funds by breaching the settlement agreement, such a claim is not cognizable as an adequate post-deprivation remedy is available to Plaintiff in the form of the New Jersey Tort Claims Act. *See Love v. New Jersey Dep't of Corr.*, Civil Action No. 14-5629, 2015 WL 2226015, at *5 (D.N.J. May 12, 2015) ("Where a state actor deprives an individual of property without authorization, [however,] either

intentionally or negligently, that deprivation does not result in a violation of the Fourteenth Amendment so long as a meaningful post deprivation remedy for the loss is available.  *See Hudson v. Palmer*, [468 U.S. 517, 530-36] (1984); *Parratt v. Taylor*, [451 U.S. 527, 543-44] (1981); *overruled in part on other grounds*, *Daniels v. Williams*, [474 U.S. 327] (1986)." ). Plaintiff has therefore failed to allege a cognizable claim against the County Defendants, and his claims against Defendants Zanetakos, Carey, the Middlesex County Prosecutor's Office, John Doe Prosecutors, and John Doe County Board employees must be dismissed.[3]

### 4.  Plaintiff's Remaining Claims will be permitted to proceed

This Court has reviewed Plaintiff's remaining claims and has discerned no basis to dismiss them at this time.  Plaintiff's claims against Defendants Lanigan, Johnson, St. Paul, Washington, and the John Doe Corrections Officers in their individual capacities will therefore proceed at this time.  Plaintiff's claims against Lanigan, Johnson, St. Paul, Washington, and the John Doe Corrections Officers in their official capacities will also be permitted to proceed <u>only</u> to the extent that Plaintiff seeks injunctive relief.

### III. CONCLUSION

For the reasons stated above, this Court will dismiss with prejudice Plaintiff's claims against the New Jersey Department of Corrections and Northern State Prison; dismiss with prejudice Plaintiff's claims against Defendants Lanigan, Johnson, St. Paul, Washington, and John Doe Corrections Officers in their official capacities only to the extent Plaintiff seeks money damages;

---

[3] As to the Middlesex County Prosecutor's Office and Defendant Carey, Plaintiff's claims must also be dismissed as they appear to be entirely based on an impermissible *respondeat superior* theory of liability.  *See, e.g., Iqbal*, 556 U.S. at 675-76.

permit Plaintiff's individual capacity and injunctive relief claims against Defendants Lanigan, Johnson, St. Paul, Washington, and John Doe Corrections Officers to proceed at this time; and dismiss without prejudice Plaintiff's claims against all Defendants Zanetakos, Carey, Middlesex County Prosecutor's Office, John Doe Prosecutors, John Doe County Board Employees, and John Doe Bank of America employees.  An appropriate order follows.


Dated: July 20, 2015                                           _s/Susan D. Wigenton_
                                                              Hon. Susan D. Wigenton,
                                                              United States District Judge