**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **LEMONT LOVE,** | **Civil Action No. 15-3681 (SDW)** |
| **Plaintiff,** | |
| v. | **OPINION** |
| **NEW JERSEY DEPARTMENT OF CORRECTIONS, et al.,** | |
| **Defendants.** | |

**WIGENTON**, District Judge:

Currently before the Court are the motions to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendants St. Paul and Washington (ECF No. 14) and by Defendant Lanigan (ECF No. 19). Petitioner has filed responses to both motions (ECF Nos. 20, 22), to which Defendants have replied. (ECF No. 23). This Court has considered the motions, and, for the following reasons, will grant the Moving Defendants' motions to dismiss, and dismiss Plaintiff's complaint as to all Defendants.

## I. BACKGROUND

In screening Plaintiff's complaint, this Court has previously provided the following summary of the factual allegations contained therein:

> Plaintiff, Lemont Love, is a convicted state prisoner currently incarcerated at Northern State Prison. Plaintiff makes the following allegations in his complaint[:] In October of 2007, the Middlesex County Prosecutor's Office seized a bank account in plaintiff's name, presumably in connection with his criminal prosecution. (ECF No. 1 at 9). Plaintiff brought suit to recover the money from the account, which ultimately settled by way of consent order on August 26, 2013. (*Id.*). Pursuant to that order, the prosecutor was to return $6,691.49 to Plaintiff by way of a check

which was to be sent within 60-90 days to Plaintiff's brother as Plaintiff didn't trust prison staff. (*Id.*). The assistant prosecutor handling the case, Defendant Zanetakos, had a check for that amount issued, but instead of mailing it to Plaintiff's brother, the check was sent to Plaintiff at the prison. (*Id.*).

On April 6, 2015, Plaintiff received a mail receipt from the prison informing him that a check in the amount set forth in the consent agreement had been received and credited to his prison account. (*Id.*). While Plaintiff alleges that the check was clearly legal mail and should not have been opened, he also states that the envelope in which the check arrived was marked with the return address of the Middlesex County Board of Chosen Freeholders. (*Id.* at 10). While the money remained in Plaintiff's account, approximately sixteen hundred dollars was deducted from the money deposited in his account to pay various fees owed by Plaintiff.[1] (*Id.* at 11).

Upon receiving the check receipt, Plaintiff submitted a remedy request form "refusing to accept those funds and inquir[ing] about why his legal mail was opened." (*Id.* at 9). Plaintiff was ultimately informed that it was the prison's policy to endorse and deposit into a prisoner's account any check sent to him while in prison. (*Id.* at 10). Plaintiff thereafter contacted Defendant Zanetakos on April 7, 2015, inquiring into why the check was sent to the prison. (*Id.*). In response, he was informed that the sending of the check was "an oversight." (*Id.* at 10).

Plaintiff also alleges that, in addition to the check discussed above, several corrections officers including Defendants St. Paul and Washington, opened other pieces of Plaintiff's legal mail without his presence or authorization. (*Id.* at 10-11). Plaintiff further alleges that, on several occasions, Defendant St. Paul, along with a group of other John Doe corrections officers, entered the law library of the prison and read the legal mail and legal documents of several prisoners "for no reason." (*Id.* at 10).

(ECF No. 5 at 2-3).

---

[1] "Plaintiff attempts to characterize these deductions as the prison "spending" his money at its discretion. (*Id* at 11). The certified account statement he attaches to his complaint, however, makes it clear that these deductions covered the costs of loans, fines, and fees Plaintiff owed to, among others, this Court and the State of New Jersey arising out of his criminal convictions and filing of civil suits. (Document 3 attached to ECF No. 1 at 11)." (ECF No. 5 at 2 n. 1).

On July 20, 2015, this Court entered an order and opinion which screened Plaintiff's complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  (ECF No. 5-6).  Pursuant to that order and opinion, this Court dismissed Plaintiff's claims against Bank of America, its employees, the prosecutor Defendants, and Northern State Prison.  (*Id.*).  This Court also dismissed Plaintiff's official capacity claims against Defendants Lanigan, Johnson, St. Paul, Washington, and the John Doe Corrections officers to the extent Plaintiff seeks money damages.  (*Id.*).  Two of Petitioner's claims, that corrections officers violated Plaintiff's rights by opening his legal mail, and a claim that the prison had performed an improper taking of Petitioner's property in violation of the Due Process clause of the Fourteenth Amendment by depositing a check into his prison account, were permitted to proceed against Defendants Lanigan, Johnson, St. Paul, Washington, and the John Doe Corrections Officers in their individual capacities, and in their official capacities only to the extent that injunctive relief was sought, however.  (*Id.*).

## II. DISCUSSION

### A.  Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n. 3 (3d Cir. 2014) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).  According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To survive a motion to dismiss for failure to state a claim,

a complaint must allege "sufficient factual matter" to show that its claims are facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Dempster*, 764 F.3d at 308 (quoting *Iqbal*, 556 U.S. at 678).

### B. Analysis

Plaintiff seeks to sue Defendants for violations of his federal constitutional rights pursuant to the federal civil rights statute, 42 U.S.C. § 1983. Section 1983 provides "private citizens with a means to redress violations of federal law committed by state individuals." *Woodyard v. Cnty. Of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013). To assert a claim under the statute, a plaintiff must allege that he was deprived of a federal constitutional or statutory right by a person who was acting under the color of state law at the time that the alleged deprivation occurred. *Id.* When called upon to evaluate a claim under § 1983, a court must first "identify the exact contours of the underlying right said to have been violated" and determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998)). Following this Court's screening of Plaintiff's complaint, only two claims remain as to all remaining Defendants: that the opening and reading of Plaintiff's legal mail violates Plaintiff's First Amendment rights, and that Plaintiff suffered an improper taking under the Due Process Clause when the prison deposited the check involved in this case in Plaintiff's inmate account. Defendants Lanigan, St. Paul, and

Washington have all moved to dismiss both of these claims.[2]   This Court will first turn to Defendants arguments regarding Petitioner's takings claim.

**1.  Defendants are entitled to qualified immunity as to Plaintiff's Fourteenth Amendment property claim as the right at issue is not clearly established.**

Defendants argue that, to the extent that Petitioner has raised a Fourteenth Amendment Due Process claim for the "taking" of his check and its deposition into his prison account, followed by deductions for various fines and fees owed, states a claim for relief, it must still be dismissed because they are entitled to qualified immunity as to that claim.   "The doctrine of qualified immunity shields government officials who perform discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"   *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law."   *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015).   Where a Plaintiff fails to plead a claim of a violation of clearly established law, "a defendant pleading qualified

---

[2] Although only Defendants St. Paul, Washington, and Lanigan have moved to dismiss the complaint at this time, the arguments addressed below would apply equally to the unserved Defendants – Defendants Johnson and the John Doe officers.  Because these arguments establish that all of Plaintiff's federal claims should be dismissed at this time, and because the same standard applies, this Court will address these arguments as to all of the Defendants, including Johnson and the John Doe Defendants, under this Court's *sua sponte* screening authority.  *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A; *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (the "legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *see also Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

immunity is entitled to dismissal before the commencement of discovery" and a motion to dismiss under Rule 12(b)(6) on qualified immunity grounds is therefore procedurally proper. *See Thomas v. Independence Twp.*, 463 F.3d 285, 291-94 (3d Cir. 2006); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity shields a defendant from liability, courts utilize a two-pronged test. *Spady*, 800 F.3d at 637. "First a court must decide 'whether the facts that a plaintiff has . . . shown make out a violation of a constitutional right'[, a]nd second, the Court must determine 'whether the right at issue was clearly established at the time of [the] defendants alleged misconduct.'" *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Where the clearly established prong is dispositive of the issue, courts should address that prong first. *Id.* In so doing, a court must "frame the precise contours of [the] right" the plaintiff claims has been violated. *Id.* at 638. In *Spady*, the Third Circuit provided the following guidance in regard to this task:

> We are mindful . . . that courts are "not to define clearly established law at a high level of generality." *al-Kidd*, 131 S. Ct. at 2084 (citations omitted). Instead, courts "must define the right allegedly violated at the appropriate level of specificity." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012). Accepting [a] broad version of the right at issue "would . . . convert the rule of qualified immunity that our cases plainly establish into a rule of extremely abstract rights." *Anderson v. Creighton*, 483 U.S. 635, 639 [(1987)]. We are thus required to frame the right at issue "in a more particularized, and hence more relevant, sense," *Anderson*, 483 U.S. at 640, "in light of the case's specific context, not as a broad general proposition," *Saucier[ v. Katz*, 533 U.S. 194, 201 (2001)].

*Id.* A right is considered clearly established either where there is applicable Supreme Court precedent, or, where no Supreme Court case is directly on point, where "existing precedent [has] placed the statutory or constitutional question *beyond debate*." *Id.* (quoting *al-Kidd*, 131 S. Ct. at 2083). It remains unsettled, however, whether a robust consensus of cases of persuasive authority in the Court of Appeals" would be sufficient to establish a constitutional right. *Id.* Where "the

6

firmly settled state of the law, established by a forceful body of persuasive precedent, would place a reasonable official on notice that his actions obviously violated a clearly established constitutional right," the plaintiff's claim is clearly established, and qualified immunity is inapplicable. *Id.*

Although Petitioner generally pleads a claim that he was deprived of property without due process in violation of the Fourteenth Amendment, this Court is mindful of the need to define the exact contours of the right at issue at an appropriate level of specificity. Thus, the right at issue here must be more properly defined regarding the facts presented by Plaintiff's claim. As a result, this Court construes Plaintiff as presenting a claim that his rights were violated by prison officials depositing a check in his name in Plaintiff's prison account, where it was then subject to deductions based on various fees and fines owed by Plaintiff to the courts and the prison. Even if this Court assumes, *arguendo*, that this type of claim would amount to the seizing of a property interest of Plaintiff's without appropriate process,[3] such a right cannot be said to be clearly established.

---

[3] At best, it is unclear that Plaintiff's claim would actually present a cognizable constitutional violation. Although Plaintiff's property, in the form of the check for some $6,000 was "taken" from its check form and deposited in Plaintiff's inmate account, Plaintiff did not "lose" the property at issue when the prison deposited the check. Plaintiff still had the same amount of money at the moment that this deposit took place and the prison itself didn't keep that money for itself. As this Court noted in screening the complaint, the only loss of funds, and in turn the loss of property, occurred when the prison, in accordance with its procedures, automatically deducted from that $6,000 money which Plaintiff legitimately owed to the prison, the State of New Jersey, and this Court based on his criminal conviction, various loans he had taken from the prison, and fines and fees owed the State. As the fines and fees were the result of Plaintiff's conviction, for which he apparently received due process in so much as he was properly convicted, and the loans and filing fees owed to the prison and to this Court were incurred by Plaintiff of his own free will, it is doubtful that any "taking" of property without due process actually took place. Indeed, those few District Courts that have addressed the issue have not found that the depositing of a check into a prisoner's account amounts to a Due Process violation. *See, e.g., Cole v. Warren Cnty.*, No. 11-189, 2012 WL 1950419, at *6 (W.D. Ky. May 30, 2012) (finding that no Due Process violation occurs when a check is deposited in a prisoner's account as the prisoner retains access to the funds and thus has not lost his property interest in the money involved); *Anderson v. Spalding*, No. 99-2755, 1999 U.S. District LEXIS 10386, at *1 (N.D. Ca. July 6, 1999)

Plaintiff, in his response to the motion, has failed to present any Supreme Court caselaw which would even suggest such a right, let alone establish it, and this Court is aware of no such caselaw. Plaintiff has likewise not shown that there is any robust consensus among the various Courts of Appeals which would suggest the right he attempts to raise has been established, and this Court has found no cases which could arguably establish the right.  Indeed, the only cases that do appear to be on point specifically raise doubts or outright reject the argument that depositing a check into a prisoner's account without his permission or a hearing amounts to a Due Process violation.  *Cole*, 2012 WL 1950419 at *6; *Anderson*, 1999 U.S. District LEXIS 10386 at *1.  As such, the right Plaintiff claims was violated when his check was deposited into his prison account and the various fees and fines he owed were deducted therefrom is not clearly established, and all Defendants are entitled to qualified immunity as to that claim.  *Spady*, 800 F.3d at 637-39.  As such, Plaintiff's Fourteenth Amendment property claim shall be dismissed with prejudice at this time as to all Defendants.

### 2.  Plaintiff's Legal Mail Claim

Defendants argue that this Court should dismiss Plaintiff's legal mail claim for failure to state a claim for which relief may be granted.  "[P]risoners, by virtue of their incarceration, do not forego their First Amendment right to the use of the mails."  *Nixon v. Sec'y Pennsylvania Dep't of Corr.*, 501 F. App'x 176, 177 (3d Cir. 2012) (quoting *Jones v. Brown*, 461 F.3d 353, 358 (3d Cir. 2006)).  An inmate's right to send and receive mail can, however, be restricted for legitimate penological purposes.  *Id.*; *see also Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *Turner v.*

---

(finding it "doubtful" that a prisoner has a property interest in keeping a check out of his prison account).

*Safley*, 482 U.S. 78, 89 (1987).  Regardless, the Third Circuit has held that the opening and reading of a prisoner's legal mail outside of his presence violates a prisoner's rights to free speech and legal access under the First Amendment.  *See Jones*, 461 F.3d at 359; *see also Bieregu v. Reno*, 59 F.3d 1445 (3d Cir. 1995), *abrogated in part*, *Lewis v. Casey*, 518 U.S. 343 (1996); *Oliver v. Fauver*, 118 F.3d 175, 178 (3d Cir. 1997) (holding that for any violation of the right of access, actual injury must be shown, thereby recognizing that *Casey* had abrogated *Bieregu* to the extent that *Bieregu* held that a right of access claim did not require actual injury where interference with legal mail was pled).  Courts have likewise recognized that the reading of a prisoner's legal mail without cause can violate a prisoner's free speech rights.  *See, e.g., Jordan v. New Jersey Dep't of Corr.*, 881 F. Supp. 947, 953 (D.N.J. 1995); *see also Wolff v. McDonnell*, 418 US. 539, 576-77 (1974), *Bieregu*, 59 F.3d at 1451-52; *Thompson v. Hayman*, No. 09-1833, 2011 WL 2652185, at *5 (D.N.J. July 6, 2011) (opening outside of the prisoner's presence, reading, delaying, or stealing a prisoner's legal mail violates a prisoner's First Amendment rights).

Defendants first argue that the check mailed from the county board of freeholders does not constitute legal mail despite being the payment for a legal settlement.  In support of this assertion, Defendants refer to *Wolff v. McDonnell*, wherein the Supreme Court observed that it would

> be permissible that prison authorities require that a lawyer desiring to correspond with a prisoner first identify himself and his client to the prison officials, to assure that the letters marked privileged are actually from members of the bar.  As to the ability to open the mail in the presence of inmates, this could in no way constitute [a free speech violation] since the mail would not be read.  Neither could it chill such communications, since the inmate's presence insures that prison officials will not read the mail.

Defendants assert that this passage essentially asserts that the only mail protected as "legal mail" is that which was clearly sent by a member of the bar to his client, and that a check mailed from a county would not amount to legal mail.  Defendants also refer to out of circuit precedent to support

this assertion. *See Grigsby v. Horel*, 341 F. App'x 314, 314-15 (9th Cir. 2009) (mail not to or from a particular attorney does not amount to legal mail); *Kaufman v. McCaughtry*, 419 F.3d 678, 685-86 (7th Cir. 2005) (letters from the U.S. Department of Justice, the ACLU, a legal services organization, a private law firm, and a county sheriff's office do not constitute legal mail where the prisoner "was neither represented nor seeking to be represented by an attorney from any of the organizations with which he exchanged correspondence"); *Sallier v. Brooks*, 343 F.3d 868, 875-76 (6th Cir. 2003) (mailings from legal organizations such as the ABA, a legal services organization, or a state attorney general's office only constitute legal mail where sufficiently marked to indicate that they contain privileged content); *O'Keefe v. Van Boening*, 82 F.3d 322, 325-27 (9th Cir. 1996) (mailings to state agencies do not qualify as legal mail).  In at least one instance, the Third Circuit has similarly limited its definition of "legal mail" to refer only to "incoming attorney and court mail."  *Fontroy v. Beard*, 559 F.3d 173, 174 n. 1 (3d Cir. 2009). Thus, it appears that the definition of legal mail in this circuit is similar to that applied elsewhere, and a check from a county office would not meet that definition.

Here, the only mail that Plaintiff asserts was opened outside of his presence was a check mailed to him by the County Board of Freeholders, which Plaintiff has not alleged was marked in any way to indicate that it was legal correspondence.  Indeed, the check involved was not apparently marked in any way to suggest that it was from an attorney, let alone an attorney actually representing Plaintiff.  Plaintiff has also failed to allege that it was in any way marked to suggest that it originated in some fashion from the courts.  As such, the check in question does not appear

to constitute legal mail, and the opening of that mail would not support a claim for tampering with Plaintiff's legal mail.[4]

Defendants assert that, without the allegation that the check amounted to legal mail tampering, Plaintiff fails to state a claim for relief as he has not alleged a sufficient pattern or practice of mail tampering. Generally, a pattern or practice of opening an individual's legal mail outside of his presence, or other tampering with a prisoner's legal mail, is required to state a cognizable claim for relief for a violation of a prisoner's right to use of the mail. *See Jones*, 461 F.3d at 358-59; *Nixon*, 501 F. App'x at 178. A solitary or isolated incident of interference with the mail therefore fails to present a cognizable claim. *Id.* Defendants therefore argue that, without the check supporting his claims, Plaintiff fails to allege more than an isolated incident of tampering with his legal mail.

As to Defendant Washington, it is clear that, absent the claim regarding the settlement check, Plaintiff has asserted no pattern or practice regarding the opening of his legal mail. Indeed, the opening of the settlement check without Plaintiff's presence is the only basis for his claims against Washington. Thus, Plaintiff's mail claims will be dismissed without prejudice as to Washington for failure to state a claim for relief. *Nixon*, 501 F. App'x at 178.

As to Defendant St. Paul and the John Doe Defendants, the issue is somewhat more complicated. In his complaint, Petitioner asserts that Defendant St. Paul and a group of other corrections officers on multiple occasions read the legal mail of various prisoners in the law library.

---

[4] Because the check would therefore constitute personal mail, and because prisoners "generally have no expectation of privacy regarding their personal mail," that the check was opened outside of Plaintiff's presence is insufficient to state a claim for relief for a violation of Plaintiff's First Amendment rights. *See McKinney v. Prosecutor's Office*, No. 13-2553, 2014 WL 2574414 at *10 (D.N.J. June 4, 2014) (quoting *Mearing v. Dohman*, No. 06-4859, 2009 WL 3127760, at *10 (E.D. Pa. Sept. 29, 2009)); *see also Wolf*, 418 U.S. at 576-77; *Jones*, 461 F.3d at 358-59.

11

Presumably, Plaintiff was one of those whose mail was read.  Although Plaintiff contends that he "documented a few times when this happened and wrote the incident up," (ECF No. 1 at 10), Plaintiff fails to present any details as to the specific instances.  Interestingly enough, one of the letters to Defendant Lanigan Plaintiff submits contains a statement that Plaintiff did not write the incidents up for fear that St. Paul would learn of his complaint.  (Document 1 attached to ECF No. 1 at 7).  As Plaintiff has not provided any specific details of incidents when his legal mail was read against his will without reason by St. Paul and his group of corrections officers, Plaintiff has provided no more than a conclusory allegation that St. Paul and the John Doe Defendants have engaged in a pattern or practice of reading the legal mail of Plaintiff and others without permission or cause.  Plaintiff has thus failed to provide sufficient factual allegations to make his claim against St. Paul and the John Does plausible, and his mail claim as to St. Paul and the John Doe Defendants must therefore be dismissed without prejudice at this time.  *Iqbal*, 556 U.S. at 678.  As Plaintiff's legal mail claim against Defendants Lanigan and Johnson is derivative of his claim that Washington, St. Paul, and the John Doe Defendants violated his mail rights, and as Plaintiff has failed to plead a plausible claim for relief as to those Defendants, his claims against Lanigan and Johnson must also be dismissed without prejudice for failure to state a claim for relief.

**3.  Plaintiff's State Law Claims**

Defendants finally argue that they are entitled to immunity as to any state law claims Plaintiff asserts under the New Jersey Tort Claims Act.  Initially, this Court notes that it is not clear whether Plaintiff does raise any state law claims in his complaint, which was brought pursuant to 42 U.S.C. § 1983.  Indeed, this Court did not construe any state law claims in screening the complaint.  (ECF No. 5).  In responding to the motion to dismiss, however, Plaintiff asserts

that he wishes to assert state law claims "based on the unauthorized taking of Plaintiff's check." (ECF No. 20 at 9).  It is not clear what state law claims may exist considering Plaintiff's money was not taken but merely provided to him in his prison account.  At any rate, Defendants argue that they acted in good faith in the enforcement of a currently valid statute and therefore are immune from liability.  This Court need not address these arguments, however, because to the extent that the complaint can be construed to contain state law claims against Defendants, this Court will decline to exercise supplemental jurisdiction over those claims as all of Plaintiff's federal claims over which this Court has original jurisdiction are being dismissed at this time.  *See* 28 U.S.C. § 1367(c)(3); *T.R. v. Cnty. of Delaware*, No. 13-2931, 2013 WL 6210477, at *8 (E.D. Pa. Nov. 26, 2013); *see also Samuels v. Warden Skradzinski*, No. 15-7362, 2015 WL 7760183, at *2 (D.N.J. Dec. 2, 2015); *Nadal v. Christie*, No. 13-5477, 2014 WL 2812164, at *8 (D.N.J. June 23, 2014).

## III. CONCLUSION

For the reasons stated above, this Court will Grant the Moving Defendants' motions to dismiss Plaintiff's complaint; will dismiss Plaintiff's deprivation of property claim with prejudice as to all Defendants; will dismiss Plaintiff's legal mail claims without prejudice as to all Defendants; and will decline to exercise supplemental jurisdiction over any state law claims Plaintiff may have.  An appropriate order follows.

February 17, 2016                                      *s/ Susan D. Wigenton*
                                                      Hon. Susan D. Wigenton,
                                                      United States District Judge